HARTFORD FIRE INSURANCE COMPANY, A CORPORATION, *Plaintiff in Error,* v. J. W. BROWN, FOR THE USE AND BENEFIT OF THE CENTRAL STATE BANK, A CORPORATION, *Defendant in Error.*

1. The acts of an agent performed within the scope of his real or apparent authority are binding upon his principal. The public have a right to rely upon an agent's apparent authority and are not bound to enquire as to his special powers, unless the circumstances are such as to put them upon inquiry.

2. The clause in the fire insurance policy placing a limitation upon the power of any officer, agent or other representative of the insurance company as to the manner of waiver of any provision or condition in the policy may itself be waived. An insurance company cannot make its local agent the medium through which all the benefits of a policy flow from the insured to it, and then deny that he has authority to represent it when the benefits of the insured are involved.

3. In determining the correctness of charges and instructions, they should be considered as a whole, and if, as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.

4. During the course of the trial of an action, where the court ruled that the burden of proof upon a certain point was upon the defendant, no harm could have ensued to the defendant from such ruling, even if erroneous; when as a matter of fact the plaintiff actually assumed such burden and met it.

5. Assignments of error predicated upon alleged facts and rulings that are not disclosed by the record cannot be considered by an appellate court.

6. No error is committed by the trial court in refusing to permit a witness, on his cross-examination to answer a question which is not in cross of any matters elicited on the direct examination and when the answer thereto, which ever way it might be, would not tend to prove the issues as made by the pleadings.

7. The amendment of pleadings during the trial of an action is a matter resting within the sound judicial discretion of the trial judge, and an appellate court will not interfere with the exercise of such discretion, whether in the granting or refusal of the same, unless a plain abuse of such discretion is shown.

This case was decided by Division A.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*Paul Carter* and *Wm. B. Farley* for plaintiff in error.

*Price & Watson* for defendant in error.

SHACKLEFORD, J.—We are called upon to review a judgment which the plaintiff in the court below recovered against the defendant upon a fire insurance policy. The declaration substantially follows the statutory form in such actions, and such original policy is attached to and made a part thereof. This policy insured the plaintiff for the term of one year from the 14th day of April, 1909, against all direct loss or damage by fire, except as therein provided, to an amount not exceeding one thousand dollars, to certain described property therein, consisting of hotel furniture and other goods and chattels. The defendant filed two pleas. In the first it was denied that all the conditions of the policy had been performed and fulfilled, so as to make the defendant liable and entitle the plaintiff to maintain an action thereon, it being specifically averred that the plaintiff, although required by the stipulations and covenants in the policy so to do, "did not give any immediate notice of any loss by fire in writing to this defendant, and did not further separate the damaged from

the undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and did not within sixty days after said fire render statement to this defendant signed and sworn to by said plaintiff or the insured as he is called in said policy, stating to the knowledge and belief of said insured, and to the time and origin of the fire, the interest of the insured and all others in the property, the cash value of each item thereof; and the amount of loss thereon, all incumbrances thereon, all other insurance whether valid or not, covering any of said property, and a copy of all descriptions and schedules in all policies and change in title, use, occupation and location and possession or expos ure of said property since the issuing of said policy; by whom and for what purpose any building therein des cribed, and the several parts thereof were occupied at the time of the fire. The defendants aver that by reason of the premises that said plaintiff is barred from bringing or maintaining this action on said contract on the policy."

The second plea was as follows:

"2. And for the second plea the defendants say that the alleged contract sued upon called a policy contains a provision and stipulation in substance and to the effect as follows:— 'This entire policy unless otherwise provided for by an agreement endorsed thereon or added thereto shall be void, if the subject of insurance be personal property and be or become incumbered by a chattel mortgage.' And defendants further aver that the subject of insurance covered by said policy was personal property and that there never was any agreement indorsed thereon or added to said policy permitting or otherwise providing the said property had been or might become incumbered by a chattel mortgage; but that in violation of said stipulation and provision the said plaintiff had incumbered said

property by executing a chattel mortgage on same to First National Bank of Graceville, Florida, January 30, 1907, and another chattel mortgage to First National Bank of Graceville, Florida, executed September 15, 1908, and that said chattel mortgage was in full force, not paid, satisfied or cancelled at the time of execution by defendant of the policy sued upon and at the time of said alleged loss of the property by fire as in the declaration is alleged."

To these pleas the plaintiff filed the following replications:

"Now comes the plaintiff in the above styled and entitled cause, and for replication to the first plea of the defendant on file herein, says,—

That it is true that the said policy of insurance sued upon contains the covenants, stipulations and agreements set forth and contained in said plea; but the plaintiff avers that the said defendant waived the requirements on the part of this defendant contracted to be performed and done by him as stipulated and set forth in said plea by unconditionally denying, prior to the institution of this suit, any liability under the policy of insurance herein sued upon.

And for first replication to the second plea of the defendant herein, the plaintiff says,—

That it is true that prior to the execution and delivery of the policy of insurance to the plaintiff by the defendant company, plaintiff had executed and delivered to the First National Bank of Graceville, Fla., the two certain mortgages mentioned and described in the said second plea, but plaintiff avers that, prior to effecting said insurance, each of said mortgages had been fully paid off and discharged, and that at the time of the taking out of the policy of insurance said mortgages were not a valid and subsisting lien against the property described in said

policy of insurance, and thereby insured; neither were said mortgages at any time thereafter a valid and subsisting lien upon said property so covered by the policy of insurance aforesaid.

And for second replication to the said second plea, plaintiff says,—

That the defendant at the time of effecting said insurance informed the plaintiff that it was not necessary to state whether or not the property insured by the said policy was incumbered by mortgage, mortgages or other liens, and further stated that even though the same was covered by mortgages or liens, such fact would not effect the insurance upon the property so insured, and that said defendant would write said policy upon the payment of the premium mentioned and set forth in the policy of insurance.

Plaintiff further avers that he started to inform the defendant the condition of said property sought to be insured as to incumbrances, but the said defendant informed the plaintiff that it made no difference and that he did not care to know anything about encumbrances or liens thereon, if any; that plaintiff relied upon the representations of the defendant and at his request paid it the sum of thirty-six & 50/100 dollars on said policy of insurance, and accepted the same from the said defendant; that the defendant accepted the said money for said insurance upon the terms and agreements herein alleged and issued the said policy herein sued upon.

. Wherefore, plaintiff alleges that the defendant is estopped from denying liability under said policy contract sued upon, by reason of the existence of any mortgage or lien upon said property which existed at the time of the execution and delivery of said contract of insurance."

The defendant interposed a demurrer to the second

replication upon the following ground: "Said replication sets up no matter of reply to defendant's plea. The policy itself sued upon shows stipulations in substance and to the effect that no agent or officer had authority to modify or change the stipulations therein contained unless endorsed upon policy. Said replication does not contain any statement that the waiver set up was endorsed on said policy or added thereto."

This demurrer was overruled, whereupon the defendant joined issue upon the replications, and the case came on for trial before a jury, which resulted in a verdict and judgment in favor of the plaintiff. Twenty-six errors are assigned. We shall not discuss them all, but shall treat such as we think merit consideration. We shall first take up the last assignment, which is based upon the overruling of the demurrer to the second replication. Confining our attention to the ground of the demurrer, to which the defendant is restricted, we are of the opinion that the question sought to be raised by this assignment has already been decided adversely to the contention of the defendant in Eagle Fire Co. v. Lewallen, 56 Fla., 246, 47 South. Rep., 947. We might well content ourselves with referring to the discussion therein and the prior decisions of this court and other authorities there cited. See especially Tillis v. Liverpool & London & Globe Insurance Co., 46 Fla. 268, 35 South. Rep. 171, S. C. 110 Amer. St. Rep. 89, and Indian River State Bank v. Hartford Fire Insurance Co., 46 Fla. 283, 35 South. Rep. 228. The facts and circumstances in the instant case upon which the pleadings are based are necessarily different from those in the cases cited, but the principle which governs runs through them all. No useful purpose would be accomplished by repeating what we have already said in these prior decisions, as they are of comparatively recent date and all accessible. Whatever valid objections might have been urged

to the second replication, we think that the specific and only one urged was not well taken, therefore the demurrer interposed to such replication was properly overruled.

The twenty-third assignment questions the correctness of a paragraph of the general charge relating to the issues sought to be raised by the second replication. We do not feel called upon to enter into any discussion of this assignment and see no useful purpose to be accomplished by setting out the paragraph of the general charge which is called in question. Of course, it must be construed in connection with the entire charge, and, so construed, it may well be not open to the criticism urged against it. Be that as it may, we do not feel that we need be concerned with the evidence or charges upon the issues so sought to be raised by this replication. As an inspection thereof readily discloses, the first replication is to the effect that prior to the issuance of the policy the two mortgages referred to and described in the second plea had been fully paid off and discharged. As to this, the evidence was all one way, and the court properly instructed the jury that such replication had been proven. Such being the case and the defendant's plea being thereby eliminated, it becomes immaterial whether the paragraph of the charge complained of was strictly correct or not. We would add that the transcript does not show that any instructions were requested by the defendant. If it conceived that any further instructions were necessary, or if it desired additional instructions upon any point, it should have prepared and submitted them to the trial court.

The first thirteen assignments are based upon the admission or exclusion of evidence. We shall not discuss them in detail. We have examined and considered them all and are of the opinion that they are practically without merit. Even if error may have been committed either in the recep-

tion or exclusion of evidence, it would seem to have been harmless to the defendant. Without attempting to make even a synopsis of the evidence, it would seem to have clearly established the issuance of the policy and the loss by fire, as alleged in the declaration, and that shortly after the fire the defendant in a letter, written and signed by Mr. R. A. Peeples, its adjuster, expressly disclaimed and denied any liability upon the part of the defendant for such loss, by reason of the fact that it claimed there was an outstanding mortgage upon such insured property, at the time such policy was issued, in favor of the State Central Bank of Campbellton, Fla., of which the defendant had not been advised. There was also evidence adduced both as to the insured property that was burned and its value, as well as that which was saved and its value, and while such evidence may not have been as full and clear upon all these points as was desirable, they were all matters for the jury to pass upon, which was done by the verdict.

At the close of the plaintiff's evidence and after he had announced that he rested his case, the defendant made the following announcement, upon which the court made the ruling which follows: "The defendant's defense is that the property at the time of the fire was mortgaged. The plaintiff have filed the replication to that plea, admitting that it had been mortgaged, but that the mortgage was paid. The burden of proof is on them. It occurs to me that they have the burden of proving it. The court thereupon ruled. No, you have the burden of proving it, to which ruling of the court the defendant by its counsel did then and there except."

This ruling forms the basis for the fourteenth assignment, which is as follows: "The court erred in ruling that the burden of proving the plea, that the property was mortgaged although the replication admits that it had

been mortgaged, but that the mortgage had been paid, were on the defendant; and in ruling that the burden was not on the plaintiff."

The defendant could have interposed a demurrer to the evidence, or, if it conceived that the plaintiff had failed to prove his case, it could have declined to introduce any evidence and have requested the court to instruct the jury to return a verdict in its favor. It will be observed that the defendant did not pursue either course, but contented itself with making an announcement or statement, which, strictly speaking, as presented would not seem to require any ruling by the trial court. Without passing upon the propriety or correctness of such course, since no point is made thereon and the same is not brought to our attention or argued, we shall briefly consider the assignment. Even if the court was in error in holding that the burden was upon the defendant, a point which we do not feel called upon to determine, no harm ensued to the defendant therefrom, because as a matter of fact the plaintiff actually assumed such burden and met it.

After the court had made its ruling that the burden of proving its plea as to the existence of the mortgage liens upon the insured property was cast upon the defendant, the defendant then introduced in evidence the two mortgages described in its plea, whereupon the plaintiff, by permission of the court, was recalled to the witness-stand for further examination. The witness, on his direct examination, proceeded to testify as follows: "Yes, I have heard the reading of the mortgage of January 30th, 1907, which I gave to the First National Bank of Graceville, for the sum of $395.00. I gave that mortgage. At the time of taking out that insurance, the $395.00 had been paid to the First National Bank, and we did not owe them a nickel. Yes, this mortgage had been fully paid off and discharged when I insured that property. This mort-

gage of September 16, 1906, has been paid off.  Yes, we don't owe them a nickel.  Yes, it had been paid at the time I took out the insurance."

· The witness was then turned over to the defendant for cross-examination, and the following proceedings took place:  "I could not tell you how long before I paid it, I suppose a year, some little bit,—it might not have been a year before I took out the policy.

And thereupon the defendant by its counsel asked the following questions:  Q.  Now, this replication says that at the time of the taking out of the insurance policy sued on, that the company informed you that it wasn't necessary that the property should be free from a lien—did the company give you any such assurance?  A.  Hartford Fire Insurance Co.  Q.  Yes, this present policy?  A. I don't understand, I don't understand what you are driving at, I don't understand the question yet.  Q.  Well, I will have to try to make it plainer.  You said in this replication that at the time you took out the policy the company told you it didn't matter whether the property was incumbered by mortgage or not,—was that true?  A.  I told them that the Central State Bank of Campbellton had a mortgage on my property.  Q.  Who?  A.  Mr. Carkhuff.  Yes sir, I told him.  He told me I need not tell him any questions.  He said it didn't matter.  Here the plaintiff moved to strike that out on the ground that it was too remote.  Q.  Was your property mortgaged?  And the court objected and ruled as follows:  No, I don't think we will go into that, to which ruling of the court the defendant by its counsel did then and there except."

The defendant seeks to make this ruling the basis for the fifteenth assignment, which is as follows:  "The court erred in striking from the evidence the testimony of J. W. Brown (re-examined) as follows:  'I told them that the bank had a mortgage on the property, Mr. Carkhuff.  Yes

sir, I told him. He told me I need not tell him any questions. He said it didn't matter,' and in refusing to allow the testimony as to whether or not, at the time the policy was taken out and at the time of the loss, the property was mortgaged."

It will be observed that the bill of exceptions fails to disclose any ruling of the court upon the motion to strike out certain testimony of the witness, therefore, so far as we are informed, no portion of the same was stricken out. This being true, the assignment is too broad and must fail for that reason, if for no other. See Vaughan's Seed Store v. Stringfellow, 56 Fla., 708, 48 South. Rep. 410, and Williams v. State, 58 Fla. 138, 50 South. Rep. 749. As we held in Douberly v. State, 51 Fla. 41, 40 South. Rep. 675, "Assignments of error predicated upon alleged facts and rulings that are not disclosed by the record cannot be considered by an appellate court." Even if we could consider the ruling of the court refusing to permit the witness to answer the question, "Was your property mortgaged?" which was the only ruling made during the cross-examination of such witness, so far as the transcript discloses, and which was the only ruling to which an exception was noted, no error would be apparent. Such question was violative of the well-established principle that questions on the cross-examination must be confined to the matters elicited on the direct examination, as well as of the further principle, equally well-established by repeated decisions of this court, that no evidence is admissible which does not correspond with the allegations in the pleadings and tend to prove the issues.

After such ruling by the court, the bill of exceptions shows the following proceedings: "Thereupon the defendant by its counsel asked leave to amend its pleas. And the plaintiff did then and there object to any amendment being made at this stage, thereupon the court ruled: I

do not think we will allow any amendment now, to which ruling of the court the defendant by its counsel did then and there except."

This ruling forms the basis for the sixteenth assignment, which is as follows: "The court erred (when it held that the property was under a mortgage though not the particular mortgage described in defendant's plea) in refusing to allow the defendant to amend its plea and correct the description of the mortgage set up in the plea to conform to the facts."

We fail to find where the court had held that the insured property was under a mortgage, though not the particular mortgage described in the defendant's plea, and such holding is not pointed out to us. The bill of exceptions does not show that the defendant stated to the court in what particulars it decided to amend its pleas, but simply that it "asked leave to amend." In Peacock v. Feaster, 51 Fla. 269, 40 South. Rep. 74, we held as follows: "Our statutes permitting amendments of pleadings are very liberal, but the matter of allowing or refusing such amendments must rest largely within the sound judicial discretion of the trial court, as the court must determine whether or not the amendment asked for is 'necessary for the purpose of determining in the existing suit the real question in controversy between the parties,' and whether or not it has been 'duly applied for,' and an appellate court will not disturb the ruling of the trial court either in granting or in denying such application, unless it is plainly made to appear that there has been an abuse of this judicial discretion." As no abuse of the judicial discretion so vested in the trial court has been made to appear, this assignment must necessarily fail.

The cross-examination of the witness then proceeded as follows: "I told him it was under a mortgage. Yes sir,

I did. I told him about it,—he told me not to tell him any questions—at all—a lot of agents did, he didn't. Yes sir I did tell him it was under a mortgage. He didn't say anything only what I told you. He said he didn't ask any questions, a lot of agents did—I need not tell him anything."

The defendant then introduced as a witness in its behalf Mr. L. D. Carkhuff, who testified that he was the agent of the defendant and wrote the policy in question and that in response to his question the plaintiff informed him that the property was unencumbered. On cross-examination, the witness contradicted the statement of the plaintiff, as testified to by him, that plaintiff had started to tell him of the existence of a mortgage to the Bank of Campbellton and witness had stopped him, telling him that it was not necessary.

At the close of the examination of this witness, the following proceedings were had: "We now ask to be allowed to amend our pleas to correspond with the facts, and to show that at the time this policy was written that the property insured was incumbered by a mortgage to Campbellton Bank, and offered to put the plea in proper shape, instanta. But the court refused to allow any amendment whatever. To which ruling of the court the defendant by its counsel did then and there except."

This ruling forms the basis for the seventeenth assignment. We are not prepared to hold that the trial judge abused the judicial discretion vested in him by refusing to permit the defendant to amend its pleas at that stage of the trial. See our discussion of the assignment just preceding the one now under consideration. The record shows that the replications to the pleas were filed on the 3rd day of May, 1909, and that the case did not come on for trial until the 18th day of November, 1909. By such

replications the defendant was put squarely on notice that the plaintiff claimed to have paid off and discharged the two mortgages described in the pleas prior to the issuance of the policy. The defendant prior to the trial made no attempt to amend its pleas, so far as disclosed by the record, but joined issue upon the replications and elected to go to trial. It is not shown that the plaintiff misled or deceived the defendant in any way. It is not made to appear what the public records showed as to the satisfaction of the two mortgages described in the plea or as to the mortgage to the Central State Bank of Campbellton. Fla.

No reason or excuse was offered for not applying earlier to the court for leave to amend the pleas. See our discussion as to amendment of pleadings in Supreme Lodge Knights of Pythias v. Lipscomb, 50 Fla. 406, 39 South. Rep. 637. The letter of Mr. R. A. Peeples, the adjuster of the defendant, to the plaintiff, bearing date the 12th day of May, 1908, which was introduced in evidence, without objection, clearly shows that such adjuster had been informed of the existence of a mortgage on the insured property in favor of the "State Central Bank of Campbellton, Fla." How he acquired this information is not made to appear, but that is of no consequence. If the defendant's adjuster had acquired such information in May, 1908, it would seem that the defendant's attorneys, with the exercise of ordinary care and diligence might also have ascertained the same by the 31st of October, 1908, when the pleas were filed, certainly before the trial in November, 1909. Further discussion is unnecessary. We are of the opinion that this assignment has not been sustained.

We have now discussed all the assignments which merit

treatment, and, having found no reversible error, the judgment must be affirmed.

WHITFIELD, C. J., and COCKRELL, J., concur—

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.